IN THE CIRCUIT COURT FOR DAVIDSON COUNTY, TENNESSEE
AT NASHVILLE

FILED
2019 MAY 24  AM 9: 20
RICHARD R. ROOKER, CLERK
D.C.

SHARITA HENDERSON,    ]

      Plaintiff,    ]

                    ]

Vs.                   ]

                    ]

WAFFLE HOUSE, INC., WH    ]
CAPITAL, LLC, MID SOUTH    ]
WAFFLES, INC.,             ]

                    ]

      Defendants.    ]

                    ]

Case No.: 19C960

JURY DEMAND

---

## DEFENDANTS' ANSWER AND THIRD-PARTY COMPLAINT AGAINST JEFFREY REINKING

---

COME NOW, WAFFLE HOUSE, INC. (hereinafter "Waffle House"), WH CAPITAL, LLC (hereinafter "WH") and MID SOUTH WAFFLES, INC., (hereinafter "Mid South"), and to the Plaintiff's Complaint, state as follows:

### FIRST DEFENSE

Plaintiff's Complaint for Damages fails to state a claim upon which relief can be granted pursuant to Tennessee Rules of Civil Procedure 12.02(06).

### SECOND DEFENSE

Jurisdiction is improper to the extent that the United States District Court for the Middle District of Tennessee has original jurisdiction of this action pursuant to 28 U.S.C. § 1332.

### THIRD DEFENSE

Responding to the individually numbered paragraphs of the Plaintiff's Complaint, Defendants show the Court as follows:

# I. PARTIES

1.

For want of sufficient information upon which to form a belief, the allegations contained in paragraph 1 can neither be admitted nor denied, and strict proof is demanded.

2.

Responding to paragraph 2 of the Plaintiff's Complaint, it is admitted that Waffle House is a for-profit corporation and is authorized to do business in Tennessee. It is expressly denied that Waffle House is a Tennessee corporation. It is admitted that Waffle House has been properly served. The rest and remainder of the allegations contained in paragraph 2 of the Plaintiff's Complaint are denied as stated.

3.

Responding to paragraph 3 of the Plaintiff's Complaint, it is admitted that WH is a for-profit corporation and is authorized to do business in Tennessee. It is expressly denied that WH is a Tennessee corporation. It is admitted that WH has been properly served. The rest and remainder of the allegations contained in paragraph 3 of the Plaintiff's Complaint are denied as stated.

4.

Responding to paragraph 4 of the Plaintiff's Complaint, it is admitted that Mid South is a for-profit corporation and is authorized to do business in Tennessee. It is expressly denied that Mid South is a Tennessee corporation. It is admitted that Mid South has been properly served. The rest and remainder of the allegations contained in paragraph 4 of the Plaintiff's Complaint are denied as stated.

5.

The allegations contained in paragraph 5 of the Plaintiff's Complaint are denied.

## II. JURISDICTION AND VENUE

6.

Responding to paragraph 6 of the Plaintiff's Complaint, same is admitted, but it is expressly denied that this Plaintiff is entitled to recover against any of these Defendants.

7.

The allegations contained in paragraph 7 of the Plaintiff's Complaint are denied.

8.

The allegations contained in paragraph 8 of the Plaintiff's Complaint are denied.

9.

The allegations contained in paragraph 9 of the Plaintiff's Complaint are denied.

## III. FACTUAL ALLEGATIONS

10.

The allegations contained in paragraph 10 of the Plaintiff's Complaint are denied as stated.

11.

Responding to paragraph 11 of the Plaintiff's Complaint, it is admitted that the franchise/license agreement speaks for itself. All allegations contrary to that agreement are hereby denied. All further allegations contained in paragraph 11 are denied.

12.

Responding to paragraph 12 of the Plaintiff's Complaint, it is admitted that the franchise/license agreement speaks for itself. All allegations contrary to that agreement are

hereby denied. All further allegations contained in paragraph 12 are denied.

13.

Responding to paragraph 13 of the Plaintiff's Complaint, it is admitted that the franchise/license agreement speaks for itself. All allegations contrary to that agreement are hereby denied. All further allegations contained in paragraph 13 are denied.

14.

Responding to paragraph 14 of the Plaintiff's Complaint, it is admitted that the franchise/license agreement speaks for itself. All allegations contrary to that agreement are hereby denied. All further allegations contained in paragraph 14 are denied.

15.

The allegations contained in paragraph 15 of the Plaintiff's Complaint are denied as stated.

16.

The allegations contained in paragraph 16 of the Plaintiff's Complaint are denied as stated.

17.

The allegations contained in paragraph 17 of the Plaintiff's Complaint are denied as stated.

18.

The allegations contained in paragraph 18 of the Plaintiff's Complaint are denied.

19.

Responding to paragraph 19 of the Plaintiff's Complaint, same is denied as stated.

20.

For want of sufficient information upon which to form a belief, the allegations contained in paragraph 20 can neither be admitted nor denied and strict proof is demanded.

21.

For want of sufficient information upon which to form a belief, the allegations contained in paragraph 21 can neither be admitted nor denied and strict proof is demanded.

22.

The allegations contained in paragraph 22 of the Plaintiff's Complaint are denied.

23.

For want of sufficient information upon which to form a belief, the allegations contained in paragraph 23 can neither be admitted nor denied and strict proof is demanded.

24.

The allegations contained in paragraph 24 of the Plaintiff's Complaint are admitted.

25.

The allegations contained in paragraph 25 of the Plaintiff's Complaint are denied as stated.

## IV. NEGLIGENCE OF DEFENDANT MID SOUTH WAFFLES, INC.

26.

Defendants hereby reincorporate by reference their responses to the allegations contained in paragraphs 1 through 25 of the Plaintiff's Complaint as if fully set forth herein.

27.

The allegations contained in paragraph 27 of the Plaintiff's Complaint are denied as stated.

28.

The allegations contained in paragraph 28 of the Plaintiff's Complaint are denied.

29.

Responding to paragraph 29 of the Plaintiff's Complaint, it is stated that duty is determined by Tennessee law, and all allegations contrary to Tennessee law are hereby denied. The rest and remainder of the allegations contained in paragraph 29 of the Plaintiff's Complaint are denied.

30.

Responding to the allegations contained in paragraph 30 of the Plaintiff's Complaint, it is stated that duties are determined by Tennessee law, and all allegations contrary to Tennessee law contained in paragraph 30 (a) through (k) inclusive are denied. The rest and remainder of the allegations contained in paragraph 30 (a) through (k) are denied.

31.

The allegations contained in paragraph 31 of the Plaintiff's Complaint are denied.

32.

The allegations contained in paragraph 32 of the Plaintiff's Complaint are denied.

## V. NEGLIGENCE OF DEFENDANTS WAFFLE HOUSE, INC. AND WH CAPITAL, LLC

33.

Defendants hereby reincorporate by reference their responses to the allegations contained in paragraphs 1 through 32 of the Plaintiff's Complaint as if fully set forth herein.

34.

The allegations contained in paragraph 34 of the Plaintiff's Complaint are denied as stated.

35.

The allegations contained in paragraph 35 of the Plaintiff's Complaint are denied.

36.

Responding to paragraph 36 of the Plaintiff's Complaint, it is stated that duty is determined by Tennessee law, and all allegations contrary to Tennessee law are hereby denied. The rest and remainder of the allegations contained in paragraph 36 of the Plaintiff's Complaint are denied.

37.

Responding to the allegations contained in paragraph 37 of the Plaintiff's Complaint, it is stated that duties are determined by Tennessee law, and all allegations contrary to Tennessee law contained in paragraph 37 (a) through (l) inclusive are denied. The rest and remainder of the allegations contained in paragraph 37 (a) through (l) are denied.

38.

The allegations contained in paragraph 38 of the Plaintiff's Complaint are denied.

39.

The allegations contained in paragraph 39 of the Plaintiff's Complaint are denied.

## VI. COMPENSATORY DAMAGES

40.

Defendants hereby reincorporate by reference their responses to the allegations contained in paragraphs 1 through 39 of the Plaintiff's Complaint as if fully set forth herein.

41.

The allegations contained in paragraph 41 (a) through (j) inclusive of the Plaintiff's Complaint are denied.

## VII.  PUNITIVE DAMAGES

### 42.

Defendants hereby reincorporate by reference their responses to the allegations contained in paragraphs 1 through 41 of the Plaintiff's Complaint as if fully set forth herein.

### 43.

The allegations contained in paragraph 43 of the Plaintiff's Complaint are denied.

### 44.

The allegations contained in paragraph 44 of the Plaintiff's Complaint are denied.

### 45.

The allegations contained in paragraph 45 of the Plaintiff's Complaint are denied as stated.

## VIII.  DAMAGES CAPS UNCONSTITUTIONAL

### 46.

Defendants hereby reincorporate by reference their responses to the allegations contained in paragraphs 1 through 45 of the Plaintiff's Complaint as if fully set forth herein.

### 47.

Responding to paragraph 47 of the Plaintiff's Complaint, it is well established that damage caps are constitutional under Tennessee law, and all allegations contrary to same are denied.

### 48.

The allegations contained in paragraph 48 of the Plaintiff's Complaint are denied.

## WHEREFORE CLAUSE

The allegations contained in the Wherefore Clause of the Plaintiff's Complaint are

denied.

## FOURTH DEFENSE

Plaintiff's alleged damages were not caused by any act or omission by Defendants, nor

were they caused by anything for which Defendants are responsible. Defendants aver that

Plaintiff's alleged damages were caused solely or proximately by the acts, wrongs, omissions,

and/or other negligence of other persons, non-parties, or entities for whose acts Defendants are

not responsible or liable.

## FIFTH DEFENSE

Additionally, or in the alternative, Defendants would raise as a defense and aver that

Plaintiff's alleged damages were caused solely or proximately by the acts, wrongs, omissions,

and/or negligent or reckless acts of Jeffrey Reinking, who Defendants would aver to be a

necessary party to this pending action, pursuant to Tenn. R. Civ. P. Rules 14 and 19, as a

potential tortfeasor either solely or proximately responsible and liable for both the acts and

resulting damages that Plaintiff alleges. Defendants would aver that Jeffrey Reinking's actions,

in unreasonably and negligently entrusting his son, Travis Reinking with firearms, despite

Jeffrey Reinking's actual knowledge that Travis Reinking had both had his right to carry

firearms revoked and stood a significant threat of danger to himself and others, are the sole and

proximate cause of all acts, wrongs, and resulting damages alleged by Plaintiff in her

Complaint. Pursuant to Tenn. R. Civ. P. 14 and 19, Defendants would show that summons and

complaint must be served upon Jeffrey Reinking as a necessary and indispensable party to this

litigation, against whom liability may be attributed.

## SIXTH DEFENSE

There exists no proximate causation between any alleged act or alleged breach of duty by Defendants and Plaintiff's alleged damages. All of Plaintiff's alleged damages were the result of the conduct of persons other than Defendants, thereby barring any recovery from Defendants.

## SEVENTH DEFENSE

The injuries and damages, if any, of which Plaintiff complains, were proximately caused and contributed to by the negligence and/or conduct of other persons or entities, and that said negligence and/or conduct was an intervening and/or superseding cause of the injuries and damages, if any, of which Plaintiff complains.

## EIGHTH DEFENSE

Defendants deny that they owed Plaintiffs a duty, but if it is established that Defendants owed a duty, at all times Defendants observed all legal duties and obligations imposed by operation of law and otherwise, and all actions were careful, prudent, proper and lawful.

## NINTH DEFENSE

Plaintiff's claims against Defendants should be denied because, at all relevant times, Defendants acted in an ordinary, reasonable, and prudent manner.

## TENTH DEFENSE

Plaintiff is not entitled to recover from Defendants in negligence, premises liability, or under any other theory of recovery.

## ELEVENTH DEFENSE

Plaintiff's claims against Defendants are barred because Defendants have not breached

any legal duty owed to Plaintiff.

## TWELFTH DEFENSE

Plaintiff's claims against Defendants may be barred by the legal doctrines of assumption of the risk and/or contributory negligence.

## THIRTEENTH DEFENSE

In the event that it is determined that Plaintiff is entitled to recovery against Defendants, such recovery should be reduced in proportion to the degree or percentage of fault attributable to the Plaintiff, any other Defendants (whether previously or subsequently dismissed, or yet to be joined), third-party defendants, or other non-party persons or entities, including any person or entity immune because bankruptcy renders them immune from further litigation, as well as any party, co-defendant, or non-party with whom Plaintiff has settled or may settle.

WHEREFORE, the Defendants, Waffle House, Inc., WH Capital, LLC, and Mid South Waffles, Inc., respectfully request that:

a) Plaintiff's Complaint and all claims contained therein be dismissed with prejudice, with all costs charged to Plaintiff;

b) a judgment be entered in favor of Defendants;

c) Defendants be allowed to join Jeffrey Reinking as a Co-Defendant to this action, as necessary and essential parties pursuant to Tenn. R. Civ. P. Rules 14 and 19;

d) Defendants be granted a trial by jury of twelve persons as to all issues raised by Plaintiff's Complaint;

e) costs of this cause and discretionary costs be assessed against Plaintiff; and

f) this Court grant Defendants such further relief as the Court may deem appropriate under the circumstances.

## THIRD-PARTY COMPLAINT AGAINST THIRD-PARTY DEFENDANT JEFFREY REINKING

**COME NOW** Defendants/Third-Party Plaintiffs Waffle House, Inc., WH Capital, LLC, and Mid South Waffles, Inc. (collectively "Defendants/Third-Party Plaintiffs" or "Third-Party Plaintiffs"), by and through counsel, pursuant to Tenn. R. Civ. P. 14.01, and hereby file this Third-Party Complaint, and respectfully show as follows:

1.

Third-Party Plaintiffs hereby incorporate herein the allegations contained within Plaintiff's Complaint, filed on or about April 18, 2019, a true and correct copy of which is attached hereto as "Exhibit A." Third-Party Plaintiffs further incorporate herein their Answer and Affirmative Defenses stated above.

2.

On April 22, 2018, Travis Reinking traveled to a Waffle House, Inc. restaurant at 3571 Murfreesboro Pike in Nashville, Tennessee ("The Antioch Waffle House") with a Bushmaster XM-15 rifle that had been returned to Travis Reinking by his father, Third-Party Defendant Jeffrey Reinking, despite Jeffrey Reinking's actual knowledge that his son was mentally unstable and posed a severe risk of harm to himself and others.

3.

Travis Reinking used the rifle to shoot and kill multiple individuals inside the Antioch Waffle House.

4.

As a result of Third-Party Defendant Jeffrey Reinking's gross negligence, Travis Reinking fired the rifle inside the Antioch Waffle House and several individuals were shot,

injured, and killed.

## I. PARTIES

### 5.

Third-Party Plaintiff Waffle House, Inc. is a Georgia corporation with a domicile and principal place of business in Gwinnett County, Georgia. Waffle House, Inc. owns the Waffle House restaurant located at 3571 Murfreesboro Pike in Nashville, Tennessee.

### 6.

Third-Party Plaintiff WH Capital, LLC is a Georgia limited liability company with a domicile and principal place of business in Gwinnett County, Georgia. WH Capital, LLC owns Waffle House's trademarks, including but not limited to those connected to the Waffle House restaurant located at 3571 Murfreesboro Pike in Nashville, Tennessee.

### 7.

Third-Party Plaintiff Mid South Waffles, Inc. is a Georgia corporation with a domicile and principal place of business in Gwinnett County, Georgia. Mid South Waffles, Inc. is a wholly owned subsidiary of Waffle House, Inc. and operates the Waffle House restaurant located at 3571 Murfreesboro Pike in Nashville, Tennessee.

### 8.

Third-Party Defendant Jeffrey Reinking ("Third-Party Defendant") is the father of Travis Reinking, and is a citizen of Tazewell County, Illinois. He may be served at his personal residence in Morton, Tazewell County, Illinois.

### 9.

At all times material, herein, the tortious acts giving rise to this lawsuit occurred in Nashville, Davidson County, Tennessee

## II. JURISDICTION, AUTHORITY AND VENUE

### 10.

This Court has subject matter jurisdiction over this cause of action pursuant to <u>Tenn. Code Ann.</u> § 16-10-101.

### 11.

This court has personal jurisdiction over the Third-Party Defendant pursuant to <u>Tenn. Code. Ann.</u> § 20-2-223 and <u>Tenn. Code Ann.</u> § 20-2-225.

### 12.

This Court is a proper venue for this claim pursuant to <u>Tenn. Code. Ann.</u> § 20-4-101 as the causes of action alleged in this Third-Party Complaint all arose in Nashville, Davidson County, Tennessee.

## III. FACTUAL ALLEGATIONS

### 13.

On three occasions in 2016 and 2017, Third-Party Defendant Jeffrey Reinking took possession of multiple firearms owned by his son, Travis Reinking.

### 14.

On all three occasions, Third-Party Defendant Jeffrey Reinking returned those firearms to Travis Reinking despite actual knowledge that his son was mentally unstable and a danger to others.

### 15.

In July 2017, Travis Reinking was arrested by the United States Secret Service at the White House in Washington, D.C. The following month, after being contacted by the FBI, the

Sheriff's Office in Tazewell County, Illinois, visited Travis Reinking at J&J Cranes, Inc. – a business owned by Third-Party Defendant Jeffrey Reinking – for the purpose of dispossessing him of his firearms and his right to possess firearms.

16.

In August 2017, the Tazewell County Sheriff's Office formally revoked Travis Reinking's Firearm Owners Identification (FOID) card. Under Illinois law, the effect of the revocation was to prevent Travis Reinking from lawfully possessing firearms.

17.

In August 2017, and at all times thereafter, Third-Party Defendant Jeffrey Reinking had actual knowledge that Travis Reinking's FOID card had been revoked by law enforcement and that his son could no longer legally possess firearms as a result.

18.

On or about August 24, 2017, Third-Party Defendant Jeffrey Reinking asked the Tazewell County Sheriff's Office for permission to take possession of the firearms and ammunition that Travis Reinking had become legally obligated to surrender.

19.

On or about August 24, 2017, Third-Party Defendant Jeffrey Reinking did in fact take possession of the firearms and ammunition that Travis Reinking had become legally obligated to surrender. At the time that he took possession of the firearms, Third-Party Defendant Jeffrey Reinking knew that Travis Reinking was "having problems."

20.

As a condition of taking possession of Travis Reinking's firearms and ammunition, the Tazewell County Sheriff's Office required Third-Party Defendant Jeffrey Reinking to agree that he would not return the firearms and ammunition to Travis Reinking.

21.

Thereafter, Third-Party Defendant Jeffrey Reinking did in fact agree that he would not return the firearms and ammunition to Travis Reinking or allow him to access them.

22.

As a result of this agreement, and only because of it, the Tazewell County Sheriff's Office permitted Third-Party Defendant Jeffrey Reinking to take possession of four of Travis Reinking's firearms, including a Bushmaster XM-15 semi-automatic rifle. Third-Party Defendant Jeffrey Reinking understood from the Sheriff's Office that he could possess the weapons himself, but that he had an obligation "to make sure that they didn't go back in the possession of his son."

23.

At the time that he took possession of Travis Reinking's firearms, Third-Party Defendant Jeffrey Reinking knew that Travis Reinking could not legally possess firearms and that it was illegal to facilitate Travis Reinking's possession of any firearm.

24.

Even so, prior to April 22, 2018, Third-Party Defendant Jeffrey Reinking returned and entrusted the Bushmaster XM-15 rifle, a 9-millimeter handgun, a .22-caliber rifle, and a Remington 710 rifle to Travis Reinking.

25.

It was at least the third time that Third-Party Defendant Jeffrey Reinking had taken possession of his son's firearms since 2016, only to return them despite actual knowledge that Travis Reinking was a dangerous and mentally unstable threat to himself and others.

26.

Travis Reinking used the Bushmaster XM-15 rifle that his father, Third-Party Defendant Jeffrey Reinking, returned to him to commit a mass shooting on April 22, 2018 at the Antioch Waffle House. During this shooting, Travis Reinking shot Waffle House patrons, employees, and property.

27.

At the time that Third-Party Defendant Jeffrey Reinking returned the Bushmaster XM-15 rifle to Travis Reinking, Jeffrey Reinking knew or should have known that the Bushmaster XM-15 rifle was a deadly weapon with the capability to injure and kill individuals and destroy property.

28.

Third-Party Defendant Jeffrey Reinking returned the Bushmaster XM-15 rifle to Travis Reinking despite actual knowledge that Travis Reinking was mentally unstable, had a history of mental instability, and was a danger to himself and others.

29.

At the time that Third-Party Jeffrey Reinking returned the Bushmaster XM-15 rifle to Travis Reinking, Jeffrey Reinking was aware that Travis Reinking planned to take and possess the rifle in Nashville, Tennessee, and that his doing so constituted a real and severe danger to all individuals with whom Travis Reinking came into contact in Tennessee.

30.

Third-Party Defendant Jeffrey Reinking transferred the rifle into Travis Reinking's possession with the actual knowledge and intent that the rifle be introduced into and possessed in the State of Tennessee and the city of Nashville by an individual whom he knew to be dangerous and mentally unstable.

31.

At the time that Third-Party Defendant Jeffrey Reinking returned the Bushmaster XM-15 rifle to Travis Reinking, Jeffrey Reinking was aware that in July 2017, his son was arrested by the United States Secret Service after he crossed into a restricted area near the White House and demanded an audience with President Donald Trump.

32.

Travis Reinking specifically stated that he wanted to speak to the President, proclaimed that he was a sovereign citizen, and insisted that he had "a right to inspect the grounds." Thereafter, Travis Reinking removed his tie, balled it into his fist, and walked past the White House's security barriers, proclaiming: "Do what you need to do. Arrest me if you have to."

33.

At the time that Third-Party Defendant Jeffrey Reinking returned the Bushmaster XM-15 rifle to Travis Reinking, Jeffrey Reinking was aware that as a result of the incident, the FBI requested that Illinois State Police revoke Travis Reinking's FOID card.

34.

Nonetheless, and despite his actual knowledge that Travis Reinking was legally prohibited from possessing firearms, Third-Party Defendant Jeffrey Reinking returned the firearms to Travis Reinking as a matter of his own personal convenience because Travis Reinking wanted to move out of the state.

35.

At the time that Third-Party Defendant Jeffrey Reinking returned the Bushmaster XM-15 rifle to Travis Reinking, Jeffrey Reinking was also aware that, in June of 2017, Travis Reinking had jumped into a Tremont Park District Pool wearing a pink woman's house coat and begun swimming in his underwear. After Travis Reinking was told to get out of the pool, he began to yell at the lifeguards and then "showed his genitals saying he was a man."

36.

Following this incident, a Tazewell County law enforcement officer called Jeffrey Reinking and advised him that "he might want to lock the guns back up until Travis gets mental help," and Jeffrey Reinking stated he would do so.

37.

At the time that Third-Party Defendant Jeffrey Reinking returned the Bushmaster XM-15 rifle to Travis Reinking, Jeffrey Reinking was similarly aware that in or about May 2016, Travis Reinking was suicidal and had threatened to take his own life.

38.

In or about May 2016, Third-Party Defendant Jeffrey Reinking specifically communicated to police that Travis Reinking was armed, unstable, and a danger to himself.

39.

In or about May 2016, Jeffrey Reinking knew that police wanted Travis Reinking to check into a hospital for a mental health evaluation, and that Travis Reinking became hostile afterward.

40.

In or about May 2016, the Tazewell County Sheriff's Office responded to a CVS parking lot in Morton, Illinois, because Travis Reinking reported that Taylor Swift was stalking him.

41.

At the time that Jeffrey Reinking returned the Bushmaster XM-15 rifle to Travis Reinking, Jeffrey Reinking was aware of several additional incidents that did not involve police but similarly confirmed that Travis Reinking was mentally unstable.

42.

At the time that Third-Party Defendant Jeffrey Reinking returned the Bushmaster XM-15 rifle to Travis Reinking, Jeffrey Reinking had been personally advised by his son's former employer that the employer was concerned about Travis Reinking's mental health.

43.

At the time that Third-Party Jeffrey Reinking returned the Bushmaster XM-15 rifle to Travis Reinking, Jeffrey Reinking was aware that in or about June 2017, Travis Reinking had threatened one of Jeffrey Reinking's employees and screamed profanity at him while wielding a rifle.

44.

At the time that Jeffrey Reinking returned the Bushmaster XM-15 rifle to Travis Reinking, Jeffrey Reinking was aware that his daughter—Travis Reinking's sister—had been advised by police to keep weapons away from Travis Reinking.

45.

At the time that Third-Party Defendant Jeffrey Reinking returned the Bushmaster XM-15 rifle to Travis Reinking, Jeffrey Reinking knew that his son had moved or planned to move to Tennessee.

46.

Third-Party Defendant Jeffrey Reinking returned the Bushmaster XM-15 rifle to Travis Reinking in an effort to circumvent the law and with the specific intention that Travis Reinking possess the firearm in Tennessee.

47.

On April 23, 2018, following an extended manhunt, Travis Reinking was arrested for killing four patrons of the Antioch Waffle House.

48.

Upon information or belief, after Travis Reinking became domiciled in Tennessee and prior to the mass shooting, Third-Party Defendant Jeffrey Reinking deliberately reached out to this jurisdiction for the purpose of helping Travis Reinking secure employment in Davidson County, Tennessee.

49.

Upon information or belief, since the time of Travis Reinking's arrest, Third-Party Defendant Jeffrey Reinking has been in contact with Travis Reinking and has reached out to and made additional contacts with him and other individuals within the jurisdiction.

## IV. CAUSES OF ACTION

**A. Negligence of Jeffrey Reinking.**

50.

Third-Party Plaintiffs incorporate and reallege the foregoing allegations as if fully set forth herein.

51.

By returning the Bushmaster XM-15 rifle to Travis Reinking and entrusting him with it despite actual knowledge that Travis Reinking was mentally unstable, Third-Party Defendant Jeffrey Reinking acted unreasonably and failed to use ordinary or reasonable care under the circumstances.

52.

By returning the Bushmaster XM-15 rifle to Travis Reinking and entrusting him with it despite actual knowledge that Travis Reinking's right to carry firearms had been revoked, Third-Party Defendant Jeffrey Reinking acted unreasonably and failed to use ordinary or reasonable care under the circumstances.

53.

By returning the Bushmaster XM-15 rifle to Travis Reinking and entrusting him with it despite actual knowledge that that Travis Reinking posed a threat to himself and others, Third-Party Defendant Jeffrey Reinking acted unreasonably and failed to use ordinary or reasonable care under the circumstances.

54.

Under the circumstances, it was not only foreseeable that Travis Reinking would use the firearms entrusted to him by Third-Party Defendant Jeffrey Reinking to commit an act of violence against others, but that very likelihood had been communicated to Jeffrey Reinking, who both understood and acknowledged it.

55.

Third-Party Defendant Jeffrey Reinking nevertheless took express and deliberate actions to frustrate and undo the efforts of law enforcement to disarm his mentally deranged and dangerous son because doing so would promote his own personal convenience.

56.

At all times relevant to this Complaint, Third-Party Defendant Jeffrey Reinking had a legal duty not to entrust Travis Reinking with firearms. He also gratuitously accepted and acknowledged that duty by expressly agreeing to the same in exchange for receiving Travis Reinking's firearms from law enforcement.

57.

At the time that Third-Party Defendant Jeffrey Reinking returned the Bushmaster XM-15 rifle to Travis Reinking, Jeffrey Reinking knew or should have known that entrusting Travis Reinking with a Bushmaster XM-15 rifle created a severe and unreasonable risk of harm to others.

58.

Given Travis Reinking's long history of mental illness and the fact that his right to carry firearms had been revoked following a recent arrest due to his erratic behavior, mental instability, and law enforcement's concern that he was a threat to himself and others, the harm

that Third-Party Defendant Jeffrey Reinking caused would have been foreseeable to any reasonable person.

59.

Jeffrey Reinking's entrustment of firearms to Travis Reinking directly resulted in, and was the cause of, the injury and death of multiple Waffle House patrons and employees, and the destruction of Waffle House property.

60.

Third-Party Defendant Jeffrey Reinking's breach of his duties of care proximately caused the injury and death of multiple Waffle House patrons and employees, and the destruction of Waffle House property.

61.

But for Jeffrey Reinking's breach of his duty of care, Travis Reinking would not have caused the injury and death of multiple Waffle House patrons and employees, and the destruction of Waffle House property.

62.

As a result of Third-Party Defendant Jeffrey Reinking's negligence, Waffle House sustained losses, including but not limited to property destruction, loss of revenue, loss of business opportunities, loss of use of property, workers' compensation losses, and reasonable costs incurred in responding to the shooting incident.

**B. Civil Conspiracy.**

63.

Third-Party Plaintiffs incorporate and reallege the foregoing allegations as if fully set forth herein.

64.

By providing Travis Reinking access to the Bushmaster XM-15 rifle and returning that deadly weapon to him despite actual knowledge that Travis Reinking's right to possess firearms had been revoked, Third-Party Defendant Jeffrey Reinking conspired with Travis Reinking to violate 430 Ill. Comp. Stat. Ann. 65/0.01, et seq.; federal law prohibiting the unlawful transfer of firearms; and other applicable laws and regulations precluding Travis Reinking from possessing any firearm.

65.

At the time that Third-Party Defendant Jeffrey Reinking returned the Bushmaster XM-15 rifle to Travis Reinking, both Jeffrey Reinking and Travis Reinking had the intent and knowledge of the other's intent to accomplish by concert an unlawful purpose, or to accomplish by concert a lawful purpose by unlawful means.

66.

The injury and death of multiple Waffle House patrons and employees, and the destruction of Waffle House property, were all products of Third-Party Defendant Jeffrey Reinking's and Travis Reinking's conspiracy to violate the law.

67.

As a consequence, Third-Party Defendant Jeffrey Reinking is jointly and severally liable for the unlawful acts of Travis Reinking pursuant to Tenn. Code Ann. § 29-11-107(b)(1).

## C. Indemnification for claims of Waffle House patrons and employees.

### 68.

Third-Party Plaintiffs incorporate and reallege the foregoing allegations as if fully set forth herein.

### 69.

To the extent that any individual claims or alleges that Waffle House is liable for the actions of Third-Party Defendant Jeffrey Reinking, Waffle House hereby asserts a claim or cause of action against Jeffrey Reinking for indemnification for any such claim or cause of action, including reasonable attorneys' fees and all other costs and damages of said claims or causes of action.

### 70.

To the extent that any individual claims or alleges that Waffle House is liable for the actions of Third-Party Defendant Jeffrey Reinking, the actions of Jeffrey Reinking, and the resulting actions of Travis Reinking set in motion by the actions of Jeffrey Reinking, were the actual and proximate cause of the damages sustained by Third-Party Plaintiffs and Third-Party Plaintiffs are entitled to be indemnified and reimbursed by Third-Party Defendant Jeffrey Reinking.

## D. Property damage.

### 71.

Third-Party Plaintiffs incorporate and reallege the foregoing allegations as if fully set forth herein.

### 72.

Travis Reinking fired the Bushmaster XM-15 rifle, which came into his possession due to the negligent acts of Third-Party Defendant Jeffrey Reinking, inside the Antioch Waffle House, striking and destroying Waffle House property.

73.

Third-Party Plaintiffs have been damaged by the loss of use of their property and the destruction of their property.

74.

The actions of Jeffrey Reinking were the actual and proximate cause of the damages sustained by Third-Party Plaintiffs.

**E. Punitive Damages**

75.

Third-Party Plaintiffs incorporate by reference all previous paragraphs is if fully set forth herein.

76.

Third-Party Defendant Jeffrey Reinking acted maliciously, intentionally, fraudulently and recklessly pursuant to Tenn. Code Ann. § 29-39-104 thereby warranting an award of punitive damages in this case.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE,** Defendants/Third-Party Plaintiffs respectfully request:

1.     That process issue and be served upon the Third-Party Defendant Jeffrey Reinking, and that Third-Party Defendant be required to appear and answer this Complaint within the time required by law;

2.     All compensatory, consequential, and incidental damages to which the Third-Party Plaintiffs are entitled in an amount not less than $100,000.00;

3.     All punitive damages to which Third-Party Plaintiffs are entitled, in an amount to be determined at trial, sufficient to deter others similarly situated from engaging in such behavior in the future;

4.     That the Third-Party Plaintiffs be awarded the discretionary costs of trying this action;

5.     That pre-judgment and post-judgment interest be awarded to the Third-Party Plaintiffs;

6.     That all costs be taxed against the Third-Party Defendant;

7.     That a jury of 12 be empaneled to try this cause; and

8.     All such further relief as this Court deems just and proper.

Respectfully submitted, this _____ day of May, 2019.




MOORE INGRAM JOHNSON & STEELE, LLP

William R. Johnson- BPR #19925
Emerson Overlook
326 Roswell Street, Suite 100
Marietta, GA 30060
(770) 429-1499

Chris R. Brooks-BPR #32486
5200 Maryland Way, Ste. 301
Brentwood, TN 37027
(615) 425-7347

*Attorneys for Defendants/Third Party Plaintiffs*

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for all parties in the foregoing matter with a copy of **DEFENDANTS' ANSWER AND THIRD-PARTY COMPLAINT AGAINST JEFFREY REINKING,** by depositing a copy of same in the United States Mail with postage properly affixed thereon addressed as follows:

Philip N. Elbert, Esq.
Jeffrey A. Zager, Esq.
Benjamin C. Aaron, Esq.
Neal & Harwell, PLC
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203

James S. Higgins, Esq.
Carrie Labrec, Esq.
The Higgins Firm, PLLC
525 4th Avenue South
Nashville, TN 37210

This _____ day of May, 2019.

Chris R. Brooks