# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHARITA HENDERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:19-cv-00443 |
| ) | |
| WAFFLE HOUSE, INC., WH CAPITAL, ) | JUDGE CRENSHAW |
| LLC, and MID SOUTH WAFFLES, INC., ) | MAGISTRATE JUDGE FRENSLEY |
| ) | |
| Defendants / Third-Party Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| JEFFREY L. REINKING, ) | |
| ) | |
| Third-Party Defendant. ) | |

**STIPULATION FOR DATA PRESERVATION AND PRODUCTION**

Plaintiff Sharita Henderson ("Plaintiff"), Defendants/Third-Party Plaintiffs Waffle House, Inc., WH Capital, LLC, and Mid South Waffles, Inc. ("Defendants" or "Waffle House"), and Third-Party Defendant Jeffrey L. Reinking ("Reinking" or "Third-Party Defendant") (collectively, the "Parties"), pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, mutually seek to reduce the time, expense, and unnecessary burdens of discovery of certain electronically stored information and privileged materials, as described further below, and to better define the scope of their obligations with respect to preserving such information and materials. To the extent that this Stipulation does not address certain issues, those issues remain open for resolution in a separate Stipulation negotiated by the Parties or by order of the Court:

A.  **Electronically Stored Information (ESI).**

   1.  *Preservation Not Required for Not Reasonably Accessible Electronic Information.*

a. The Parties stipulate that preservation is not required for not reasonably accessible electronic information.

b. Unless otherwise agreed to or ordered by the Court, the Parties are not required to obtain a forensic image of the preserved data as long as the native files and associated metadata are preserved as set forth in Section A.3.

c. Nothing herein shall prevent a Party from later requesting that any information or documents identified above be preserved and produced if specific acts demonstrate a particular need for such evidence that justifies the burden of preservation and retrieval, as provided in Fed. R. Civ. P. 26(b)(2)(B) or otherwise.

2. *Preservation Does Not Affect Discoverability or Claims of Privilege*. By preserving information for the purpose of this litigation, the Parties are not conceding that such material is discoverable, nor are they waiving any claim of privilege. Nothing in this Stipulation shall be interpreted to require the disclosure of either irrelevant information or privileged information. The Parties do not waive any objections to the production, discoverability, admissibility, or confidentiality of documents and ESI except as expressly provided herein.

3. *Other Preservation Obligations Not Affected*. Nothing in this Stipulation shall affect any other obligations of the Parties to preserve documents or information for other purposes, such as pursuant to court order, administrative order, or statute or in response to other pending or anticipated litigation. In addition, nothing in this Stipulation shall eliminate or alter any Party's obligation to retain native format copies, including associated metadata, of all documents produced in this litigation, together with the original hard copy documents for all paper discovery produced in this litigation.

4. *Search Protocols*. Discovery of relevant ESI shall proceed in a sequenced fashion. In connection with any requests for production of documents, the Requesting Party and Producing Party shall in good faith negotiate a method for searching documents, identifying proposed search terms, custodians, and/or databases to search, and any restrictions as to scope or method, including, but not limited to, date, field, and document types. If an agreement is not reached within twenty-one (21) days of the service of requests for production of documents, the Parties shall narrow the issues and then contact the Court concerning the dispute before filing any motion to resolve the dispute. The Parties recognize that a full analysis of the appropriateness of a search term cannot be performed without analyzing the amount of data each search term would provide for review. Accordingly, after the e-discovery method is determined for each Party, whether by agreement or at the Court's direction, the Producing Party shall collect the data, analyze the search terms, and provide any objection to a search term as soon as reasonably possible. The Parties shall make a good faith effort to determine the scope and method of collection, to collect the relevant documents, and to analyze the applicable search terms within twenty-one (21) days of the service of any requests for production. If an agreement is not reached as to search terms, then the Parties shall narrow the issues and then contact the Court concerning the dispute before filing any motion to resolve the dispute. The Parties agree that the fact that a document is captured by application of any agreed-upon search terms does not mean that such document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation or any required disclosure. Such determinations shall be made by the Producing Party. After the search terms are applied, whether by agreement or at the Court's direction, the Producing Party shall produce the requested documents within thirty (30) days, unless the Parties agree that a longer period is needed or the Court approves a longer

period. Prior to or after searching the documents, but before a review by counsel, the data may be globally de-duplicated to eliminate exact duplicates. If the data is de-duplicated, this process should be verified by comparison of the message id or the MD5 hash value. If timing becomes an issue, counsel shall work together to reach a resolution. If an agreement is not reached, the Parties shall narrow the issues and then contact the Court concerning the dispute before filing any motion to resolve the dispute.

**B.  Format for Production.**

The Parties stipulate to the following methods of production:

1. *Hard Copy Documents.* All black-and-white hard copy documents will be scanned and produced in electronic form. The hard copy documents shall be converted to single-page TIFF images and produced following the same protocol set forth herein or otherwise agreed to by the Parties.

2. *Metadata Fields and Processing.* The Parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists: Custodian, File Path, Email Subject, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date Created, Date Modified, MD5 Hash, File Extension, Bates Number Begin, Bates Number End, Attachment Range, Attachment Begin, and Attachment End (or the equivalent thereof). The metadata categories set forth above that can be extracted shall be produced for a document. The Parties are not obligated to manually populate any of the aforementioned categories if such categories cannot be extracted from a document, with the exception of the following: Custodian, Bates Number Begin, Bates Number End, Attachment Begin, and Attachment End.

3. *TIFFS*. Single-page Group IV TIFFs should be provided, at least 300 dots per inch (dpi). Single-page TIFF images should be named according to the unique Bates number, followed by the extension ".TIF". Original document orientation should be maintained (i.e., portrait to portrait and landscape to landscape).

4. *Text Files*. For each document originating in electronic format, a text file containing the full text of such document should be provided along with the image files and metadata. Text of native files should be extracted directly from the native files. The text file should be named according to the unique Bates number, followed by the extension ".TXT." The Parties agree that the full text or OCR of any document will not be contained within a data load file, but rather as a stand-alone file with each text file containing an entire document as it is defined.

5. *Database Load Files*. An ASCII is a delimited data file (.txt, .dat, or .csv) that can be loaded into commercially acceptable database software (e.g., Summation). The first line of each text file must contain a header identifying each data field name (i.e., header row). Each document within the data load file must contain the same number of fields as defined in the header row.

6. *Cross-Reference Image File Registration*. An image load file is a file that can be loaded into commercially acceptable production software (e.g., Opticon, iPro). Each TIFF in a production must be referenced in the corresponding image load file. An exemplar load file format is below.

ABC0000001,PROD001,\\IMAGES\001\ABC0000001.tif,Y,,,2
ABC0000002,PROD001,\\IMAGES\001\ABC0000002.tif,,,,
ABC0000003,PROD001,\\IMAGES\001\ABC0000003.tif,Y,,,1

7. *Bates Numbering*. All images must be assigned a unique and sequential Bates number.

8. *Native File Productions*. The Parties agree that when producing a native file, they will include a TIFF image as a placeholder for the file to represent the file in the production set. The TIFF image placeholder for a native file should be branded with a unique Bates number and state "See Native Document" on the TIFF image. The native file should then be renamed to match the Bates number assigned to the document with its original file extension. The file name field produced in the production load file that reflects the original metadata should maintain the original file name.

9. *Microsoft Office Files, WordPerfect and other Standard Documents (e.g., Google Docs and PDF Documents)*. MS Office files, WordPerfect and other standard documents, such as PDF documents and the like, will be converted to single-page TIFF images and produced consistent with the specifications herein. If a document contains comments or tracked changes, the TIFF images shall be generated to include the comments or track changes contained in the file.

10. *Email and Attachments*. Email and attachments should be converted to single-page TIFF images and produced consistent with the specifications provided herein. Attachments shall be processed as separate documents, and the text database load file shall include a field in which the Producing Party shall identify the production range of all attachments of each email.

11. *Microsoft PowerPoint and Other Presentation Files*. The Parties shall process presentations (MS PowerPoint, Google Presently) to include hidden slides and speaker's notes by imaging in a way that both the slide and the speaker's notes display on the TIFF image.

12. *Good Cause for Additional Requests*. If good cause exists to request production of specified files in native format, a Party may request such production and provide an explanation of the need for native file review. If an agreement is not reached as to whether a document should be produced in native format, the Parties shall narrow the issues and then contact the Court concerning the dispute before filing any motion to resolve the dispute.

13. *Other Documents or Data*. Before any Party produces certain structured or other electronic data that is not easily converted to static TIFF images, such as databases, CAD drawings, GIS data, videos, etc., the Parties will meet and confer to discuss the appropriate format for the production.

14. *Color Documents*. Except as otherwise specifically provided herein or agreed to by the Parties, documents originally in color need not be produced in color unless the production in black and white alters or obscures the substance of the document. A Party may request that a reasonable number of documents be produced in a color format upon review of the other Party's production.

15. *Redactions*. In the event that a document requires redaction, the Parties agree that native files, full text or OCR, and specified metadata categories will be excluded (see Section B.2. above for excluded metadata categories). The TIFF image should show the word "redacted" where applicable and a production load file field should be populated to indicate the document contains a redaction.

16. *Designations*. In the event that a document requires a confidentiality designation (e.g., "CONFIDENTIAL" or the like), the Parties agree to follow protocols set forth in the issued Protective Order.

17. *Production Media.* Documents and ESI shall be produced on optical media (CD or DVD), external hard drives, or via an FTP site or similar readily accessible electronic media (the "Production Media"). Each piece of Production Media shall identify a production number corresponding to the Party and production with which the documents on the Production Media are associated (e.g., "[Defendant Party] 001," "[Plaintiff Party] 001"), as well as the volume of the material in that production (e.g., "- 001", "-002"). For example, if the first production from a Party comprises document images on three hard drives, the Party shall label each hard drive in the following manner: "[Party Name] 001-001," "[Party Name] 001-002" and "[Party Name] 001-003." Each piece of Production Media shall be labeled to also identify: (a) the production date and (b) the production number range of the materials contained on the Production Media.

C. **Third-Party Documents.** A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Stipulation with the subpoena and state that the Parties to the litigation have requested that third parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall produce any documents obtained pursuant to a non-Party subpoena to the opposing Party. If the non-Party production is not Bates stamped, the Issuing Party will brand the non-Party production images with unique prefixes and Bates numbers prior to producing them to the opposing Party per the technical specifications outlined in this Stipulation. Nothing in this Stipulation is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third parties to object to a subpoena.

D. **Costs of Document Production.** Unless the Court orders otherwise, each Party shall bear the costs of preserving, collecting, processing, reviewing, and producing its own documents and ESI.

**E.     No Waiver.** The Parties acknowledge that certain disclosures made pursuant to Federal Rules of Civil Procedure 26 and 16, or through other formal or informal pretrial disclosures, may inadvertently constitute the disclosure of documents or information that is otherwise subject to the protections of the attorney-client privilege, work product immunity, or some other protection. To the extent that such disclosures are made, the Parties agree that any party receiving protected information will immediately inform the other party's counsel of the disclosures of protected documents or information when the receiving party recognizes privileged or protected information. The Producing Party may require an immediate clawback of any produced document that the Producing Party believes to be privileged or protected from production at any point in time. The Parties agree that any production of a privileged document or document otherwise protected from production will be assumed to have been inadvertent. The Parties agree that a receiving party must challenge the privilege or protection of documents after any clawback if the receiving party believes a document in question is not protected from production. The Parties agree that if a party discloses material or information in connection with the above-captioned action that the producing party claims to be protected by the attorney-client privilege, the attorney work product doctrine, or other privilege or immunity from discovery, the disclosure of that material or information will not constitute or be deemed a waiver or forfeiture—in this or any other action—of any claim of privilege or protection that the producing party would otherwise be entitled to assert with respect to the material or information and its subject matter. The Parties agree that no subject matter waiver of attorney-client privilege or work product immunity is made or implied by such disclosures, including as to non-disclosed aspects of discovery practices, procedures, and strategies employed by the Parties.

**F.    Scope of Agreement.** The Parties agree that this Stipulation shall govern the discovery of ESI and paper documents with respect to the issues addressed herein. This Stipulation shall not apply to documents previously produced by the Parties, whether formally or informally, in connection with this cause of action prior to execution of this Stipulation. The Parties have worked in good faith to identify and agree to the foregoing discovery procedures. Despite their best efforts, however, the Parties recognize that they cannot, at this stage of the case, predict how this matter will unfold, and they agree to continue to meet and confer and to negotiate in good faith as issues arise. This Stipulation may be revised or amended by agreement between the Parties or by order of the Court.

Respectfully submitted,

**NEAL & HARWELL, PLC**

/s Jeffrey A. Zager
Philip N. Elbert, No. 009430
Jeffrey A. Zager, No. 032451
Benjamin C. Aaron, No. 034118
1201 Demonbreun Street, Suite 1000
Nashville, TN 37203
(615) 244-1713
pelbert@nealharwell.com
jzager@nealharwell.com
baaron@nealharwell.com

James S. Higgins, No. 16142
Carrie Labrec, No. 26865
THE HIGGINS FIRM, PLLC
525 4th Avenue South
Nashville, TN 37210
(615) 353-0930
jsh@higginsfirm.com
carrie@higginsfirm.com
*Counsel for Plaintiff Sharita Henderson*

**MOORE INGRAM JOHNSON & STEELE, LLP**

/s
Chris R. Brooks, No. 32486
5200 Maryland Way, Ste. 301
Brentwood, TN 37027
(615) 425-7347
cbrooks@mijs.com

William R. Johnson, No. 19925
Christian Laycock
Tammi L. Brown
326 Roswell Street
Marietta, GA 30060
(770) 429-1499
wrj@mijs.com
chlaycock@mijs.com
tlbrown@mijs.com
*Counsel for Defendants/Third-Party Plaintiffs, Waffle House, Inc., WH Captial, LLC, and Mid South Waffles, Inc.*

**FEENEY & MURRAY, P.C.**

/s_____
John Thomas Feeney, No. 11482
424 Church Street, Suite 2230
P.O. Box 198685
Nashville, TN 37219
jtf@feeneymurray.com
*Counsel for Third-Party Defendant Jeffrey Reinking*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was electronically filed and served upon the following counsel of record using the Court's Electronic Case Filing System on this _____ day of October, 2019:

MOORE INGRAM JOHNSON
& STEELE, LLP
Chris R. Brooks
Maryland Way, Ste. 301
Brentwood, TN 37027
(615) 425-7347
cbrooks@mijs.com

William R. Johnson
Christian Laycock
Tammi L. Brown
326 Roswell Street
Marietta, GA 30060
(770) 429-1499
wrj@mijs.com
chlaycock@mijs.com
tlbrown@mijs.com
*Counsel for Defendants/Third-Party Plaintiffs
Waffle House, Inc., WH Captial, LLC, and
Mid South Waffles, Inc.*

FEENEY & MURRAY, P.C.
John Thomas Feeney
424 Church Street, Suite 2230
P.O. Box 198685
Nashville, TN 37219
*Counsel for Third-Party Defendant
Jeffrey Reinking*

/s Jeffrey A. Zager_____