UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SHARITA HENDERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| WAFFLE HOUSE INC.; | ) |
| WH CAPITAL, LLC; and | ) |
| MID-SOUTH WAFFLES, INC., | )   No. 3:19-cv-00443 |
| | ) |
| Defendants and Third Party Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| JEFFREY L. REINKING, | ) |
| | ) |
| Third Party Defendant. | ) |

## MEMORANDUM OPINION

Early in the morning on April 22, 2018, Sharita Henderson was eating with a friend at the Antioch Waffle House restaurant located at 3571 Murfreesboro Pike in Nashville, Tennessee. At approximately 3:25 a.m., Travis Reinking allegedly entered the restaurant carrying an AR-15 Bushmaster assault rifle and opened fire. According to contemporaneous news accounts, four people were killed, and a number of others were wounded. Ms. Henderson was shot four times and seriously injured.

As a result of the shootings, Ms. Henderson filed a Complaint for negligence against Waffle House, Inc.; WH Capital, LLC; and Mid-South Waffles, Inc. (collectively "Waffle House) seeking both compensatory and punitive damages. The essence of her claim is that Waffle House negligently and recklessly failed to take reasonable steps to avoid injury to it patrons. More specifically, she asserts:

> In the months and years before Ms. Henderson was shot, a substantial amount of criminal activity had occurred on or in the immediate vicinity of the Defendants' restaurant. Yet, despite knowledge of this criminal activity, Waffle House failed to implement adequate security measures to protect its patrons during the late-night and early-morning hours from the reckless or intentional acts of third parties. For example, and without limitation, although Waffle House provides armed security personnel on the premises of some of its restaurants during the late-night and early-morning hours, there was no security personnel present in the parking lot, inside the restaurant, or anywhere else on the premises at the time of the shooting; and, at the time of the shooting, the back door of the Waffle House was locked, preventing emergency escape through the back door.

(Doc. No. 29 at 2).

In response, Waffle House filed an Answer generally denying liability. Waffle House also filed a Third Party Complaint, contending that the blame lay elsewhere by arguing:

> This case arises from the tragic intersection of murderous acts committed by a mentally unstable and violent man, Travis Reinking, and the reckless acts of Travis Reinking's father, Defendant Jeffrey Reinking, who entrusted his mentally unstable and violent son with multiple firearms despite his son's long-standing—and escalating—history of aggressive, threatening behavior, violent outbursts, and mental illness, and despite multiple warnings from law enforcement to Defendant Reinking to prevent his son from accessing those firearms.

(Id.).

Now before the Court is Third-Party Defendant Jeffrey Reinking's Motion for Judgment on Pleadings. (Doc. No. 134). In it, he argues that Waffle House's "attempt to apportion [its] fault with the alleged fault of Jeffrey Reinking or Travis Reinking is contrary to established Tennessee law." (Id. at 1). Waffle House opposes the Motion. (Doc. No. 141).

### I. Standard of Review

Motions for Judgment on the Pleadings are governed by Rule 12(c) of the Federal Rules of Civil Procedure and are analyzed the same as Motions to Dismiss for failure to state a claim under Rule 12(b)(6). Jackson v. Prof'l Radiology Inc., 864 F.3d 463, 466 (6th Cir. 2017). In ruling on

such motions, "a district court 'must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief.'" Engler v. Arnold, 862 F.3d 571, 574–75 (6th Cir. 2017) (quoting Kottmyer v. Maas, 436 F.3d 684, 689 (6th Cir. 2006)). To survive either a 12(b)(6) or 12(c) motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 575 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Mere labels and conclusions are not enough; the allegations must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id.

### III. Application of Law

"The established Tennessee law" on which Jeffrey Reinking relies is Turner v. Jordan, 957 S.W.2d 815 (Tenn. 1997) and Limbaugh v. Coffee Med. Ctr., 59 S.W.3d 73 (Tenn. 2001).

In Turner, a hospital nurse was attacked by a mentally ill patient with a history of assaultive behavior. She then brought suit against the patient's treating psychiatrist, alleging medical negligence. A jury awarded her $1,186,000, and found the psychiatrist liable for the entire amount. The trial court approved the amount of damages, but ordered a new trial on the allocation of damage as between the patient and psychiatrist.

On appeal, the psychiatrist asserted the trial court correctly found that his alleged negligence should have been compared with that of the patient. After first discussing the "familiar principles of negligence enunciated by our earlier cases," and then surveying the law regarding the duty of care by a psychiatrist, the Tennessee Supreme Court disagreed, writing:

3

> In our view, the conduct of a negligent defendant should not be compared with the intentional conduct of another in determining comparative fault where the intentional conduct is the foreseeable risk created by the negligent tortfeasor. As other courts have recognized, comparison presents practical difficulties in allocating fault between negligent and intentional acts, because negligent and intentional torts are different in degree, in kind, and in society's view of the relative culpability of each act. Such comparison also reduces the negligent person's incentive to comply with the applicable duty of care. Moreover, while a negligent defendant may, of course, raise a third party's intentional act to refute elements of the plaintiff's negligence claim such as duty and causation, fairness dictates that it should not be permitted to rely upon the foreseeable harm it had a duty to prevent so as to reduce its liability.

Id. at 812, 823.

Several years later, the Tennessee Supreme Court was presented with substantially the same issue in Limbaugh, albeit in "a different factual setting." 59 S.W.3d at 87. In that case, a ninety-year-old resident of a nursing home was assaulted and seriously injured by a nursing assistant employed by the home. Her son (as conservator and then executor of her estate) filed suit against the nursing home and the employee. After a bench trial, the trial court awarded $40,000 against the nursing home for its negligence, and another $25,000 against the nursing assistant for assaulting the resident.

On appeal, the Tennessee Supreme Court "continue[d] to adhere to the principal established in Turner" that "conduct of a negligent defendant should not be compared with the intentional conduct of a nonparty tortfeasor in apportioning fault where the intentional conduct is the foreseeable risk create by the negligent tortfeasor." Id. The "different factual setting" in Limbaugh was that claims were brought against all of the alleged tortfeasors (*i.e.* both the intentional and negligent actors), whereas in Turner the claim was brought solely against the allegedly negligent actor. "After careful consideration," the Limbaugh court concluded that "where the intentional actor and the negligent actor are both named defendants and each are found to be responsible for the plaintiff's

4

injuries, then each defendant will be jointly and severally responsible for the plaintiff's total damages." Id. at 87. This meant that *both* the nursing home and the nursing assistant were liable for *all* of plaintiff's damages.

Based upon Turner and Limbaugh, Jeffrey Reinking makes a number of arguments in the form of broad statements of Tennessee law. For example, he argues that "under Tennessee law[,] the conduct of a negligent tortfeasor cannot be compared with conduct of an intentional actor when the intentional conduct is the foreseeable risk created by the negligent tortfeasor." (Doc. No. 135 at 4). This falls squarely within the holding of Turner. He also argues that, "[u]nder the law of Tennessee, Waffle House cannot be allowed to seek an apportionment of fault with either Jeffrey Reinking or Travis Reinking." (Id. at 5). As it pertains to Travis Reinking, this falls within the holding of Limbaugh when "apportionment" is given it true legal meaning. However, Jeffrey Reinking goes too far when he argues that "[a]ny fault of Waffle House due to a lack of sufficient security must be attributable solely to Waffle House and be based solely on the allegations made by Plaintiff against Waffle House." (Id. at 5). Neither Turner nor Limbaugh stand for either proposition as a matter of law.

Jeffrey Reinking also goes too far when he suggests that Turner and Limbaugh, either alone or in combination, require judgment in his favor on the Third Party Complaint. This is because neither case precludes the possibility of contributory negligence by others who are found negligent. That is what is alleged against Jeffrey Reinking. Moreover, he is being sued for civil conspiracy, which neither case addresses. That Waffle House cannot point the finger at Travis Reinking, a non-party, intentional actor, to diminish its responsibility does not mean that Jeffrey Reinking cannot be sued for negligence and civil conspiracy. All, Waffle House, Travis and Jeffrey Reinking, as

5

Limbaugh holds may be "jointly and severally responsible." 59 S.W. 3d at 87. Accordingly, his Motion for Judgment on the Pleadings will be denied.

Although the Court is denying Jeffrey Reinking's motion, the Court finds it appropriate to address certain arguments raised by Waffle House to complete the record on the motion, and to limit further litigation down the road as to the applicability and meaning of Turner and Limbaugh as they pertain to this case.

Waffle House first argues that Jeffrey Reinking lacks standing to raise the issue of his son's potential liability and his "only purpose" in doing so "is to cause delay and/or to be stubbornly litigious[.]" (Doc. No. 141 at 5). The same might be said about Waffle House arguing that Jeffrey Reinking lacks standing.

True, as Waffle House points out, "to have standing, one must suffer a particularized injury which means that the injury must affect the person in a personal and individual way." (Id. at 4) (citing Bender v. Williamsport Area Sch. Dist., 475 U.S. 534 (1986)). But, by being named as the sole Defendant in the Third Party Complaint, Jeffrey Ranking has suffered a "particularized injury." That his argument fails on the merits says nothing about whether, in the words of Bender, he has "a sufficient stake in the outcome of the litigation." 475 U.S. at 536. Unquestionably, he has standing to challenge whether the Third Party Complaint states a viable claim for relief.

Next, Waffle House argues that both Turner and Limbaugh are "wholly inapplicable to the case at hand" because "both of the cases turn on a defendant's special relationship with the tort feasor and specific knowledge as to the propensity of the tortfeasor's conduct." (Id. at 5) (emphasis in original). To be sure, both cases discussed the special relationship between a medical caregiver and a patient, but they did so, not in the context of the allocation of fault, but in the context of duty

6

and foreseeability. Moreover, and as pointed out in Turner, Tennessee had already "joined the vast majority of jurisdictions in recognizing that a business has an affirmative duty to take 'reasonable measures to protect their customers from foreseeable criminal attacks' if the business 'knows, or has reason to know, either from what has been or should have been observed or from past experience, that criminal acts against its customers on its premises are reasonably foreseeable[.]'" Turner, 957 S.W.2d at 818 (quoting McClung v. Delta Square Ltd. Partnership, 937 S.W.2d 891, 901-02 (Tenn. 1996)); see also Wallis v. Brainerd Baptist Church, 509 S.W.3d 886, 902 (Tenn. 2016) (stating that to mitigate the harshness of the common law rule that there is no affirmative duty to aid or protect others, "exceptions have been created for circumstances in which the defendant has a special relationship with either the individual who is the source of the danger or the person who is at risk," including a "business owner and patron"); Cullum v. McCool, 432 S.W.3d 829, 833 (Tenn. 2013) (stating that "legal duties can also arise when there is a special relationship between the parties" and that "a long-recognized special relationship . . . is that between a business owner and patron").

Finally, Waffle House argues that it would be premature for the Court to "prohibit Waffle House from seeking apportionment of fault to Jeffrey Reinking and Travis Reinking," because "the Court would be required to decide that Waffle House was a negligent actor," even though no proof has been presented on this issue. (Doc. No. 141 at 4). After all, in both Turner and Limbaugh, "it was after there was a finding of fact regarding negligence and foressability, that the court determined that the conduct of a negligent tortfeasor cannot be compared with conduct of an intentional actor when the intention conduct is the foreseeable risk created by the negligent tortfeasor[.]" (Id.) (citation and quotation omitted) (emphasis in original).

Obviously, the Tennessee Supreme Court could not determine whether the trial court properly

7

allocated fault until after the trial was held. However, it does not require a determination of negligence to decide whether, as a legal matter, the allegations by Waffle House are sufficient to survive a Motion for Judgment of Acquittal. Nor does it require a jury to determine that Waffle House was negligent for this Court to make clear that, in this diversity case governed by the substantive law of Tennessee, Jackson v. Ford Motor Co., 842 F.3d 902, 907 (6th Cir. 2016), Turner and Limbaugh apply, meaning that should Waffle House be found negligent, its conduct will not be compared with the intentional conduct of Travis Reinking.

### III. Conclusion

On the basis of the foregoing, Jeffrey Reinking's Motion for Judgment on the Pleadings (Doc. No. 134) will be denied.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE